1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9   CALIFORNIA SPORTFISHING
    PROTECTION ALLIANCE,
10

11          Plaintiff,                    CIV. NO. S-10-1801 GEB GGH PS

12      vs.

13  WILLIAM CALLAWAY,
    dba PARADISE READY MIX,
14                                         ORDER AND

15          Callaway.                      FINDINGS AND RECOMMENDATIONS

16  _____/

17          Previously pending on this court's law and motion calendar for March 15, 2012,

18  were defendant Callaway's motion to dismiss, filed January 25, 2012, and plaintiff CalSpa's

19  motion to compel discovery, filed November 14, 2011.  Callaway appeared in pro se.  CalSpa

20  was represented by Erik Roper.  Having reviewed the papers on support of and in opposition to

21  the motions, the court now issues the following order and findings and recommendations.

22  BACKGROUND

23          This case is proceeding on the amended complaint, filed June 21, 2011.

24  California Sportfishing Protection Alliance ("CalSpa") is proceeding as a "citizen enforcer,"

25  under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*., alleging that William Callaway,

26  dba Paradise Ready Mix, Inc. ("PRM") is continuing to violate the terms of the National

1

1   Pollutant Discharge Elimination System (NPDES) Permit based on storm water discharged to a

2   "wash" at the border of the cement facility from Callaway's ready mix concrete facility in

3   Paradise.  In addition to these alleged violations, CalSpa further alleges that Callaway failed to

4   implement the required Best Available Technology Economically Achievable ("BAT") for toxic

5   and non-conventional pollutants, and Best Conventional Pollutant Control Technology ("BCT")

6   for conventional pollutants, and that he failed to develop and implement an adequate Storm

7   Water Pollution Prevention Plan and adequate Monitoring and Reporting Program.  CalSpa seeks

8   civil penalties, injunctive relief and costs.

9   DISCUSSION

10   II.  Callaway's Motion to Dismiss

11        A.  CalSpa's Request for Judicial Notice

12             CalSpa has filed a request for judicial notice, which Callaway has not opposed.

13   CalSpa requests judicial notice of its Exhibit A, which is an 83 page document entitled,

14             "State Water Resources Control Board (State Water Board) Water
             Quality Order No. 97-03-DWQ National Pollutant Discharge
15             Elimination System (NPDES) General Permit No. CAS000001
             (General Permit) Waste Discharge Requirements (WDRS) For
16             Discharges of Storm Water Associated with Industrial Activities
             Excluding Construction Activities (hereafter "General Industrial
17             Storm Water Permit" or "General Permit)."

18             A court may take judicial notice of court records.  See MGIC Indem. Co. v.

19   Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th

20   Cir. 1980).  However, not all court records are equal with respect to the ability to take judicial

21   notice.  The *sine qua non* for any judicial notice request is that the information sought to be

22   noticed is of a character that is generally known, or cannot reasonably be disputed.  Fed. R. Ev.

23   210(b).  Also, the facts have to be relevant to the proceeding before the court.  Because CalSpa

24   failed to object to this request for judicial notice, and because the documents appear to relevant

25   to this litigation, the request is granted.  Thus, for the purposes of this motion, CalSpa will have

26   established the storm water requirements applicable to this property.

2

1    B.  Legal Standards

2        There are two general bases for the motion to dismiss – Callaway disputes the

3    applicability/constitutionality of the Clean Water Act as applied to him and/or his property, and

4    CalSpa's standing to pursue this Clean Water Act citizen's enforcement action.  Thus, there are

5    two possible legal standards in play – Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

6        With respect to the applicability of the Act, or its constitutionality, the parties

7    mistake the issues as being "jurisdictional," which would permit disputed fact resolution as set

8    forth below.  However, the constitutionality of a law, or the applicability of a law, especially here

9    whether Callaway is discharging pollutants into "navigable waters," does not impact the subject

10   matter jurisdiction of the Court.  See Sierra Club v. City and County of Honolulu, 2008 WL

11   3850495 (D. Haw. 2008), and cases cited therein.  Thus, unless the facts of the complaint do not

12   state a claim as a matter of law, not taking into account filings which demonstrate disputed facts,

13   that "applicability/constitutionality" aspect of the  motion to dismiss must fail.  On the other

14   hand, the question of standing does go to the subject matter jurisdiction of this court for which

15   the parties could submit facts outside the pleadings.

16    Rule 12(b)(6) - Failure to State a Claim

17       In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

18   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

19   it must contain factual allegations sufficient to "raise a right to relief above the speculative

20   level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

21   pleading must contain something more...than...a statement of facts that merely creates a suspicion

22   [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

23   and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

24   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

25   556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

26   "A claim has facial plausibility when the CalSpa pleads factual content that allows the court to

3

1  draw the reasonable inference that the Callaway is liable for the misconduct alleged."  Id.

2         In considering a motion to dismiss, the court must accept as true the allegations of

3  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

4  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

5  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

6  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

7  that general allegations embrace those specific facts that are necessary to support the claim.'"

8  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

9  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

10 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

11 Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

12        The court may consider facts established by exhibits attached to the complaint.

13 Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

14 consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

15 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

16 papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

17 1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

18 Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

19        A pro se litigant is entitled to notice of the deficiencies in the complaint and an

20 opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

21 Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

22        Rule 12(b)(1) - Subject Matter Jurisdiction

23        On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

24 CalSpa bears the burden of proof that jurisdiction exists.  See, e.g., Sopcak v. Northern Mountain

25 Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel. &

26 Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Different standards apply to a 12(b)(1)

1   motion, depending on the manner in which it is made.  See, e.g., Crisp v. U.S., 966 F. Supp. 970,

2   971-72 (E.D. Cal. 1997).

3         First, if the motion attacks the complaint on its face, often referred to as a "facial

4   attack," the court considers the complaint's allegations to be true, and CalSpa enjoys "safeguards

5   akin to those applied when a Rule 12(b)(6) motion is made."  Doe v. Schachter, 804 F. Supp. 53,

6   56 (N.D. Cal. 1992).  Presuming its factual allegations to be true, the complaint must

7   demonstrate that the court has either diversity jurisdiction or federal question jurisdiction.  For

8   diversity jurisdiction pursuant to 28 U.S.C. § 1332, CalSpa and Callaway must be residents of

9   different states.  For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint

10  must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or

11  controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute.

12  Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

13        Second, if the motion makes a "factual attack" on subject matter jurisdiction,

14  often referred to as a "speaking motion," the court does not presume the factual allegations of the

15  complaint to be true.  Thornhill, 594 F.2d at 733.  In a factual attack, Callaway challenges the

16  truth of the jurisdictional facts underlying the complaint.  "Faced with a factual attack on subject

17  matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No

18  presumptive truthfulness attaches to CalSpa's allegations, and the existence of disputed material

19  facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

20  claims."  Id. (quotations and citation omitted).  The court may hear evidence such as declarations

21  or testimony to resolve factual disputes.  Id.; McCarthy v. United States, 850 F.2d 558, 560 (9th

22  Cir. 1988).[1]

23

24        [1]  If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot
    determine the jurisdictional issue until such facts are appropriately resolved.  See Roberts v.
25  Corrothers, 812 F.2d 1173, 1177-78 (9th Cir.1987); see also Trentacosta v. Frontier Pac. Aircraft
    Indus., 8l3 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion
26  determines facts where jurisdictional issue and merits are intertwined).

C. <u>Analysis</u>

Callaway brings his motion under Rules 12(b)(1) and 12(b)(6).  In summary, his arguments are: (1) the Clean Water Act is unconstitutional as applied to him; (2) this action is penal in nature and therefore unconstitutional as applied to him as the accused; (3) injunctive relief is improper where there are adequate remedies including criminal action; (4) the Clean Water Act is unconstitutional in permitting private citizens to prosecute under it where it is penal in nature; (5) lack of subject matter jurisdiction because inland water is not federal navigable water, the subject property is near a "normally dry wash, " and not within Congressional intent, and there is no point source which discharges into navigable waters, (6) CalSpa has no standing because it is not a real party in interest, and (7) in the alternative, the court should stay the action and order limited discovery on the issues of jurisdiction and standing.  With respect to all categories, except for (6), the motion will be decided on the facts of the complaint, and those facts for which judicial notice could be taken.

The first amended complaint provides (quoted with ellipses):

5.  This complaint seeks relief for Callaway's discharges of pollutants from an approximately three acre concrete manufacturing facility owned and/or operated by Callaway.  The Facility collects and discharges storm water and unauthorized non-storm water to Honey Run Creek and/or the local storm water conveyance system, both of which ultimately drain to the Sacramento River, and the Sacramento-San Joaquin Delta.  Callaway's discharges of pollutants from the Facility are in violation of the Act and the ....Permit for storm water discharges.

6. ....With every rainfall event, hundreds of thousands of gallons of polluted storm water originating from industrial facilities discharge to Honey Run Creek, the Sacramento River, and the Sacramento-San Joaquin Delta.

25.  In order to discharge storm water lawfully in California, industrial dischargers [such as Callaway] must comply with the terms of the General Permit

1    or have obtained and complied with an individual NPDES permit.

2          36. The Facility is classified under Standard Industrial Classification

3    ("SIC")....Industrial activities occur throughout the Facility.  The Facility is

4    primarily used as a concrete manufacturing facility.....Many of these activities

5    occur outside in areas that are exposed to storm water and storm flows due to the

6    lack of overhead coverage, functional berms and other storm water controls.

7    CalSpa is informed and believes that Callaway's storm water controls, to the

8    extent any exist, fail to achieve BAT and BCT standards.

9          37.  The management practices at the Facility are wholly inadequate to

10   prevent the sources of contamination....The Facility lacks essential structural

11   controls such as grading, berming and roofing to prevent rainfall and storm water

12   flows from coming into contact with these and other sources of contaminants....

13         38.  During rain events storm water laden with pollutants flows from the

14   Facility to Honey Run Creek...

15         40.  Honey Run Creek, the Sacramento River, and the Sacramento-San

16   Joaquin Delta are waters of the United States. [legal and factual conclusion]

17   [Several claims based on these facts and others are then stated.]

18   (FAC, dkt. no. 34.)

19         These averments and others clearly meet the Iqbal standards.  It is not possible, or

20   advisable, to prove in the complaint one's case with minute detail, exhibits and other methods of

21   proof.  For example, the complaint need not contain further allegations about Honey Run Creek,

22   i.e., the cfs of flow during rain events, the precise times of year the Creek may be dry, its precise

23   route to the Sacramento River and so forth.  The complaint is not the place for such detail, and a

24   complaint must contain some shortcut conclusions.  Otherwise, the "short and plain" statement

25   requirement of Fed. R. Civ. P. 8 is transmuted into an encyclopedic and tediously stated detail.

26   The allegations rise above the speculative level and fairly put Callaway on notice of what has

1    been alleged against him.  The court now turns to each of Callaway's contentions.

2                    1.  Constitutionality of the Clean Water Act

3                    Callaway first contends that the Clean Water Act ("CWA") only applies to the

4    United States and those navigable waters that involve interstate commerce by flowing across one

5    or more states.  Callaway, therefore, does not make a facial attack on the Clean Water Act

6    (CWA); rather he contends that it is unconstitutional as applied to him or his property.

7                    Callaway cites no cognizable authority for his proposition.  In United States v.

8    Riverside Bayview Homes,Inc., 474 U.S. 121, 133, 106 S.Ct. 455, 462 (1985), the Supreme

9    Court recognized that "Congress clearly intended to exercise its powers under the Commerce

10   Clause to regulate at least some waters that would not be deemed 'navigable' under the classical

11   understanding of that term."  See also, United States v. Eidson, 108 F.3d 1336, 1341 (11th Cir.

12   1997), stating that Congress intended the CWA to have the broadest possible constitutional reach

13   and finding that the CWA reaches non-navigable waters.  In Rapanos v. United States, 547 U.S.

14   715, 126 S.Ct. 2208 (2006), the definition of navigable waters was narrowed in a fractured

15   opinion, but that case was one of statutory definition, not constitutional jurisprudence.  Rapanos

16   may well be the dispositive case when the facts are fully developed, but the various statutory

17   interpretations do not stand as a constitutional bar to application of the CWA in Callaway's case.

18   Indeed, any pronouncement that the CWA is unconstitutional as applied would be vastly

19   premature here on a motion to dismiss, as the "application" would have to be made on unknown

20   and undeveloped facts.

21                   Moreover, the constitutional issue here is illusory.  To the extent the "wash" at

22   issue meaningfully connects to tributaries which empty into indisputably navigable waters, the

23   constitutionality of the CWA is in little doubt.  To the extent that the "wash" is simply

24   unimportant and ephemeral as a water source to navigable waters, the constitutionality issue does

25   not come into play as the CWA may not impose liability in the first place.

26                   The motion to dismiss on constitutional grounds should be denied.

                                              8

2.  Whether this Action is Penal in Nature

Callaway argues since the CWA is penal in nature, i.e., statutory penalties may be imposed for violation, it is unconstitutional as applied to him, in violation of Bailey v. Drexel Furniture Co., 259 U.S. 20 (1922).  While statutory "penalties" may be imposed under the civil sections of the CWA, Callaway's argument has been foreclosed by the Supreme Court.  United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636 (1980) (finding the civil penalties under the Federal Water Pollution Control Act, aka Clean Water Act, do not make the CWA a penal or quasi-penal statute).

3.  Whether Injunctive Relief is Appropriate

Callaway argues that injunctive relief is improper where there are adequate remedies including criminal action, to protect the water resources of the state.  Again, Callaway cites no on point authority for this contention, and it flies in the face of the CWA which expressly authorizes such relief in a civil action.  33 U.S.C. § 1365(a); see generally Tull v. United States, 481 U.S. 412, 425, 107 S.Ct. 1831, 1839 (1987) (in a CWA action, government was free to seek an equitable remedy in addition to legal relief).  Congress is not limited in the remedies it may desire to give in a particular statutory scheme by common law notions.  Whether injunctive relief is available to remedy prospective violations of the CWA depends on the facts of the case, irreparable harm, the continued activity at the site, if any, and other constraints.

4.  Whether Storm Water Discharged from the Facility Reaches Navigable Waters Under the Act

Callaway argues that the court has no subject matter jurisdiction under the CWA because storm water from the Facility has no point source, does not reach navigable waters, and that it is not near Honey Run Creek.  (Callaway Decl., ¶¶ 19, 20.)  Callaway argues that the Facility is in a mountainous area that is not located near any body of water, including a stream, and that it is "very close to the top of the watershed in what could only be termed a dry wash." (Mot. at 28.)  Callaway argues that channels through which water flows intermittently or

1   ephemerally or that periodically provide drainage for rainfall, are not waters of the United States.

2          For the reasons set forth above, Callaway's contentions cannot be adjudicated on

3   the motion to dismiss.  The parties submit statements and declarations concerning their views on

4   the coverage of the CWA with respect to Callaway's "wash."  The court, of course, cannot

5   adjudicate facts on a Rule 12(b)(6) motion to dismiss.  In order to take into account the facts

6   submitted by the parties, the court would have to transform the motion to dismiss into one for

7   summary judgment.  Given that discovery is still ongoing, and given that the court views the

8   factual showing incomplete at this time, the court will not advance the motion to dismiss into one

9   for summary judgment.

10          This aspect of the motion to dismiss should be denied.

11          5. <u>Standing</u>

12          Callaway argues that CalSpa is not the real party in interest, that it cannot show an

13   injury in fact, that the injury is fairly traceable to the challenged action, and that CalSpa cannot

14   show the injury is likely and can be redressed by a favorable decision.

15          CalSpa argues that Article III does not require it to show personal injury, and that

16   organizational standing does have the same requirements.  Both parties go into great detail here,

17   but standing seems pretty clear.

18          With respect to standing, and the concrete injury analysis within standing, the

19   court has focused in on paragraphs 6, 7 and especially 8 of the Amended Complaint, and does not

20   find that the allegations are patently insufficient.  The undersigned quotes the pertinent parts:

21          With every rainfall event, hundreds of thousands of gallons of polluted storm
           water originating from industrial facilities discharge to Honey Run Creek, the
22          Sacramento River, and the Sacramento-San Joaquin Delta.
                                          ***
23          CSPA...has approximately 2,000 members who live, recreate and work in and
           around waters of the State of California, including [the aforementioned creeks and
24          rivers]. CSPA is dedicated to the preservation, protection and defense of
           environment, and the wildlife and the natural resources of all waters of
25          California....
           .....Members of CSPA use and enjoy the [aforementioned creeks and rivers], into
26          which Callaway has caused, are causing, and will continue to cause, pollutants to

10

be discharged.  Members of CSPA use these areas to fish, sail, boat, kayak, swim, birdwatch, view wildlife and engage in scientific study.... Callaway's discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.  Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Callaway's ongoing failure to comply with the Clean Water Act.

(FAC, ¶¶ 6-8.)

CalSpa appears to allege standing on behalf of itself and that of its members.  First CalSpa directly alleges that its interests are injured as an association:

"'There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'")

American Civil Liberties Union, Nev. v. Heller, 378 F.3d 979, 984-85 (9th Cir. 2004) quoting Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197 (1975).  And, at the pleading stage, general allegations of harm suffice: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137 (1992), quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990).

With respect to associational standing:

An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 181, 120 S.Ct. 693, (2000).  See also, Western Watershed Project v. Kraayenbrick, 620 F.3d 1187, 1197 (9th Cir. 2010).

"[A]n organizational plaintiff can either assert standing on its own behalf or standing on behalf of its members."  Environmental Protection Information Center v. Pacific Lumber Co., 469 F.Supp.2d 803, 814 (N.D. Cal. 2007).

> In order to satisfy the standing requirement of Article III, an individual plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the Callaway; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Id., quoting Laidlaw, 528 U.S. at 180-81, 120 S.Ct. 693; Morton, 405 U.S. at 734-41, 92 S.Ct. 1361.

The court finds from the general pleading that CalSpa has alleged sufficient injury to its own interests, at least at this stage of the case, although this is by no means a foregone conclusion. CalSpa has also presented declarations of two of its members, in which they outline their involvement in CalSpa, including their fishing and boating activities, and what they have observed in regard to the changing wildlife habitat over a period of years. See Jennings Decl., Shutes Decl.

Thus, for purposes of the pleading stage of this litigation, the motion to dismiss should be denied.[2]

6.  Whether There is no Standing Because Claims are Moot

Callaway's motion states that Paradise Ready Mix ceased doing business on November 18, 2010. Callaway argues that because he ceased doing business, past injuries are not redressable by a favorable decision. Callaway argues that furthermore some of the alleged violations occurred in 2005, 2007, and 2008 long before the complaint was filed.

CalSpa's opposition states that according to facility personnel on November 18, 2011, Callaway had been operating the facility as recently as October, 2011. CalSpa argues that its claims are not moot because Callaway has failed to conclusively establish that he ceased

_____

[2] At one point in the motion to dismiss, Callaway argues that the CWA itself does not confer standing on citizens to pursue private actions for violation of the Act. The court does not understand Callaway's contention in that the CWA by specific statute grants private citizens authority to pursue private actions. 33 U.S.C. 1365(a). That is all the statutory standing necessary.

1   operations.  Because Callaway has prevented CalSpa from conducting discovery, it has been

2   unable to determine when and if Callaway ceased operations.  If the court grants CalSpa's motion

3   to compel discovery, it will be able to show evidence of ongoing violations.  CalSpa believes that

4   Callaway intermittently operates the facility.  In any event, argues CalSpa, dismissal based on

5   mootness is not permitted where the activity has putatively ceased but remains capable of

6   repetition.  Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 190-

7   91 (2000).  Here, the Regional Board has not approved a NOT (Notice of Termination) for the

8   Facility.  (Roper Decl., Ex. A.)

9           As is evident from the above discussion, the court considers only the allegations

10  of the complaint.  Even if mootness is considered to be an issue of subject matter jurisdiction, the

11  facts brought forth to establish mootness are insubstantial and premature.  Callaway does not

12  submit *evidence* that his company has ceased all business.  Given that discovery is ongoing on

13  this and other matters, the motion to dismiss on mootness grounds is premature.

14      II.  CalSpa's Motion to Compel Discovery

15          After hearing, the court issued a summary order granting the motion to compel in

16  its entirety.  The court explains the reasoning for its order herein.

17          On March 8, 2012, CalSpa filed its portion of the joint statement with an affidavit

18  outlining the efforts of Erik Roper to obtain Callaway's participation.  According to CalSpa,

19  Roper sent Callaway three meet and confer letters on October 19, 2011.  Callaway provided

20  amended responses in November, 2011, but CalSpa states they contain many of the same

21  deficiencies of which CalSpa had complained in its October 19th letters.  On January 20, 2012,

22  Roper sent Callaway a first draft of its portion of the joint statement.  On February 29, 2012,

23  Roper sent Callaway a revised version of CalSpa's second draft of the joint statement.  Having

24  received no indication from Callaway regarding his participation in the joint statement, Roper

25  sent Callaway an email on March 8 at 1:14 p.m., inquiring as to Callaway's intentions and

26  informing him that if he did not see a response by 3:00 p.m., he would begin creating a CalSpa-

1 only statement for filing that day.  At the last moment, Callaway requested that the discovery

2 hearing be deferred on account of medical issues.

3          Since Callaway was informed on Friday, March 9 that his request for a

4 continuance was denied, he filed his own "joint statement" on Monday, March 12.  Callaway

5 continues his general arguments that this action is penal in nature based on the substantial

6 penalties of $37,500 per day that CalSpa is seeking.  As a result, Callaway claims he has not been

7 advised of his Miranda rights, invokes his Fifth Amendment right not to respond, and asserts that

8 CalSpa must first obtain a search warrant based on probable cause.  Callaway also argues the

9 merits of the case, including lack of standing, the complaint is vexatious, CalSpa has a remedy in

10 the local state water code, CalSpa is acting as a public prosecutor and therefore should have the

11 same burden, CalSpa has violated the Fourth Amendment against unreasonable searches and

12 seizures, all acts occurred in California and therefore should be subject only to the laws of

13 California.  Callaway also argues that CalSpa forwarded its portion of the draft joint statement

14 without the exhibits which are the original discovery requests, causing Callaway to have

15 difficulty in completing his portion of the statement.  Further, CalSpa cites only portions of

16 Callaway's responses to the discovery requests.

17          The outstanding discovery is CalSpa's first set of requests for admissions, first set

18 of interrogatories, and first request for production of documents.

19          A.  Requests for Admissions

20          CalSpa argues that Callaway's amended responses numbered 1-16, 19-22, are

21 improperly evasive and fail to fairly respond to the substance of the matter.  Callaway first states

22 that this is a criminal prosecution, and that he invokes the Fifth Amendment.  He "stands on his

23 responses."  He also argues the merits of the case, that CalSpa has no standing because it cannot

24 demonstrate injury, causation or redressability.  Callaway also spends time discussing why he is

25 not liable.  A few of the RFAs are set forth here as examples.

26 \\\\\

1    RFA number 1 seeks an admission that "the Facility is subject to the General

2 Permit."  Callaway objected to the request, claiming that it improperly calls for expert opinion or

3 a legal conclusion regarding the definition of "Facility," whether this term applies to the business

4 "previously owned" by Callaway, and whether it is subject to the General Permit.  Callaway

5 denied this request, stating he is without sufficient knowledge to respond to it under penalty of

6 perjury.

7    RFA number 2 seeks an admission that storm water flowing from the Facility is

8 discharged to "navigable waters."  The amended response is almost the same as the previous

9 response, that it requires an expert opinion or legal conclusion.  Callaway further states, "there is

10 no factual basis stated that would justify or qualify what is meant by the phrase 'discharged' in

11 relationship to the "Facility" and a "Navigable Water."

12    In response to RFA number 5, seeking an admission that the Facility falls within

13 the Standard Industrial Classification Code for "Ready-mixed Concrete," i.e. SIC Code 3273,

14 Callaway rescinded his previous admission, and changed the admission response to "denies."  He

15 objected to the RFA as unintelligible as currently framed.  He also gave the same response as

16 stated previously, that it required an expert opinion or legal conclusion.

17    CalSpa argues that Callaway may not amend his prior admissions, citing Fed. R.

18 Civ. P. 36(b) which states, "a matter admitted under this rule is conclusively established unless

19 the court, on motion, permits the admission to be withdrawn or amended."

20    In later responses, Callaway provides the aforementioned responses, and adds that

21 the request is "over broad; disjunctive; absent foundation; devoid of any facts to support the

22 complainant opinions or conclusions."  See RFA number 8, seeking an admission that "wastes

23 generated during the processing of the various aggregate materials used in the manufacturing of

24 concrete may come into contact with storm water at the Facility."

25    In response to other RFAs, Callaway has included the aforementioned responses,

26 as well as that the RFA is hearsay, is not reasonably calculated to lead to the discovery of

1  admissible evidence, and that the events referenced appear to be one time acts.  See e.g. RFA no.
2  21.

3        B.  Requests for Production of Documents

4        Callaway's responses include the following objections which CalSpa argues fail
5  to comply with the Federal Rules of Civil Procedure.  First, Callaway invokes the Fifth
6  Amendment.  Second, Callaway claims the requests are unintelligible, vague and ambiguous.
7  CalSpa states that all terms are either defined in the "Definitions" portion of the RFPD set One,
8  or have plain meanings.  Third, Callaway claims he does not have to respond to requests for
9  documents beyond the time when he ceased operating the facility, but CalSpa asserts that the
10 Federal Rules of Civil Procedure require him to produce all documents in his possession, custody
11 or control.  Furthermore, the Regional Board has never approved a Notice of Termination
12 ("NOT") for the Facility, and therefore Callaway continues to be the *de jure* operator of the
13 Facility.  Finally, some of Callaway's responses indicate his objection to CalSpa as a citizen
14 enforcer of the CWA; however, CalSpa argues that its role and right is well settled.

15        An example of a response is the one provided for RFP number 10 which seeks all
16 documents evidencing any conversation with a representative of the State Water Board or
17 Regional Board, from 1992 to present.  Callaway responds that the request is overbroad, vague,
18 burdensome, that it covers a time period where Callaway is not in control of the property, is
19 merely a fishing expedition, that the sole purpose is to find a violation of law under the private
20 attorney general doctrine, that the phrase State Water Board is a vague and ambiguous phrase, as
21 is Regional Board, that Callaway lacks sufficient information to voluntarily and knowingly
22 provide information under Miranda v. Arizona, and he invokes his Fifth Amendment right.
23 (Roper Aff. at 27-28, Dkt. no. 68-4 at 2-3.)

24        RFP number 21 seeks all documents pertaining to any construction, upgrades,
25 maintenance or repairs to any structure, including berms designed to control the flow of storm
26 water at "your Facility."  Callaway objected as overbroad, vague, ambiguous without factual

1   foundation or clarification, that some authority such as a specific dictionary must be cited which

2   defines numerous words, including construction, upgrades, maintenance, repair, structure, berms,

3   designed, and references Callaway's "prior" business.  Callaway also objected because the

4   request called for expert opinion or legal conclusion as to these words.  Callaway then objected

5   to the phrases, "control the flow," "storm water," and "your facility,"  as lacking factual

6   foundation for what the relationship has to do with Callaway's prior business or with what

7   CalSpa needs to know.  Callaway also cited <u>Miranda</u> and the Fifth Amendment in support of his

8   refusal to respond.  (Roper Aff. at 47-49, Dkt. no. 68-4 at 22-24.)

9           C.   <u>Interrogatories</u>

10          Callaway makes the same objections and responses as provided in regard to this

11  discovery, which includes interrogatories numbered 1 through 13.  He invokes the Fifth

12  Amendment, claims the interrogatories are unintelligible, vague, or ambiguous, etc.

13          One example of Callaway's responses to interrogatories is number 1, which asks

14  Callaway to describe any action undertaken at the Facility by Callaway since May 14, 2005 to

15  prevent or reduce discharge of storm water contaminated with pollutants from the Facility, and

16  provide dates and duration of such activities, the type of activities, and portions of the Facility

17  where these activities were conducted, the persons who conducted the activity and the purpose of

18  the activity.  In response, Callaway first objected based on overbreadth and burden.  He then

19  stated that the "request" is merely a fishing expedition and not reasonably calculated to lead to

20  the discovery of admissible evidence.  He also objected on the basis of vague and ambiguous

21  words such as "action, undertaken, Facility, you, prevent, reduce, contaminated, pollutants,

22  activities, portions, persons, conducting" because the meanings are ambiguous.  He further

23  objected to this interrogatory as calling for expert opinions and legal conclusions.  He also stated

24  that portions of the interrogatory lacked factual basis or foundation, and that there are no facts

25  stated that could provide a nexus or relationship to Callaway's prior business.  Callaway then

26  cited <u>Miranda</u> and the Fifth Amendment.  (Roper Aff., at 14-16, Dkt. no. 68-3 at 42-44.)

1    *Analysis*

2         First, Callaway's part of the joint statement was belatedly filed, and is therefore

3    stricken.  This is not the first time in this litigation that Callaway has violated deadlines, both

4    Rule defined and court ordered.  While the court has gone out of its way to be sensitive to

5    Callaway's *pro se* status, that sensitivity cannot become one which applies the rules to only one

6    party.  Callaway has an obligation to follow the same rules as any other party.  King v. Atiyeh,

7    814 F.2d 565, 567 (9th Cir. 1987).

8         Even if Callaway's part of the joint statement were not stricken, the court finds

9    that all responses are evasive and intended to not convey any substantive information.  The

10   myriad, boilerplate objections based on Callaway's self-incrimination contention has been found

11   to be without merit.  United States v. Ward, supra.  Moreover, the tedious and near universal

12   protestations that the terms used by CalSpa are not understandable to Callaway, fail to take into

13   account the express definitions given to those words, or are simply, for the most part, designed to

14   stall discovery.  Callaway has not exercised the diligence necessary to be able to state with

15   credibility that he has investigated the factual aspects of the discovery request at issue, but that

16   after exercising that diligence, he either does not know the answer or only can maintain a partial

17   answer.

18        Callaway's discovery responses were so nearly universally deficient, that the court

19   will not, and cannot, parse out any possible meritorious objections or unfeigned assertions of

20   ignorance.  Therefore, Callaway was ordered to re-respond to all the discovery requests brought

21   to issue by CalSpa's discovery motion.

22        Finally, the court finds insufficient notice by CalSpa to Callaway that it was

23   seeking sanctions for the obtuse nature of the discovery responses.  Moreover, for this last time,

24   the court will find that Callaway's pro se status, age and medical condition, require some

25   leniency herein.  The request for sanctions brought to the court's attention at hearing is denied.

26   \\\\\

CONCLUSION

Accordingly, IT IS ORDERED that: CalSpa's motion to compel, filed November 14, 2011, (dkt. no. 49), be granted in its entirety.  Any request for sanctions is denied.

IT IS HEREBY RECOMMENDED that: Callaway's motion to dismiss, filed January 25, 2012, (dkt. no. 55), be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 19, 2012

                                          /s/ Gregory G. Hollows
                                    UNITED STATES MAGISTRATE JUDGE

GGH:076/CSPA1801.mtd.wpd